UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHRISTOPHER FOREMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-04218-SLD |
| ) | |
| UP MANAGEMENT, LLC, d/b/a ROCK ) | |
| ISLAND AUCTION COMPANY, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court is the parties' Joint Motion for Court Approval of Settlement and Dismissal of Complaint ("Joint Motion"), ECF No. 10. For the reasons that follow, the Joint Motion is GRANTED.

BACKGROUND[1]

Plaintiff Christopher Foreman was employed as a driver by Defendant UP Management, LLC from May 20, 2024 until June 19, 2024. Defendant operates an auction company which specializes in antique and collector firearms. During the hiring process, Plaintiff informed Defendant that he did not have a Commercial Driver's License ("CDL"). Plaintiff was hired and directed to pick up and deliver items to be sold by Defendant, a task which involved significant interstate driving. Plaintiff was restricted to driving Defendant's "sprinter" cargo vans—operation of Defendant's larger "box" trucks required a CDL.

---

[1] Unless otherwise noted, the following factual allegations are drawn from Plaintiff's Amended Complaint. *See generally* Am. Compl., Not. Removal Ex. E, ECF No. 1-5 at 4–8. As part of their Settlement Agreement and Release in Full, the parties agree that their "acts, omissions, or statements . . . are not to be construed as an admission of liability for any claims or defenses, with liability being expressly denied." Settlement Agreement § 5.1, Joint Mot. Ex. A, ECF No. 10-1; *see also id.* § 1.1 (disputing Plaintiff's allegations). These factual allegations are recited solely to provide context for the parties' bargaining positions and the Court's analysis.

1

On or about June 10, 2024, Plaintiff complained to his supervisor and a vice president of Defendant that he was not getting paid overtime for the hours he had worked in excess of forty hours in a given workweek. Defendant's position was that Plaintiff was classified as a salaried employee and exempted from overtime-pay requirements. Plaintiff researched this exemption and formed the good-faith belief that his operation of the sprinter cargo vans satisfied an exception to that exemption, such that he was entitled to overtime pay.

On June 19, 2024, Plaintiff again raised the issue of overtime pay and complained that he was being ordered to remain present for work duties when he had already worked more than forty hours that week and was told he would not be receiving overtime pay. Plaintiff told his supervisor that he was going to Human Resources ("HR") to discuss the overtime issue. Plaintiff informed an HR generalist that he wanted to discuss his work hours in light of being ordered to remain at work without any additional pay. That HR generalist called the HR supervisor on speakerphone in Plaintiff's presence. The HR supervisor stated to the HR generalist: "I am not going to spend any time on this and I don't want you to spend any time on this either." Am. Compl. ¶ 19. The HR supervisor then hung up the phone. Shortly after returning to the work area, Plaintiff was approached by his supervisor, who stated to him: "[Plaintiff], come with me. At this point we are cutting ties." *Id.* ¶ 22. In response to Plaintiff's question about whether he was being fired, Plaintiff's supervisor stated: "You are obviously unhappy about the work hours and that is not going to change." *Id.* ¶ 23. Plaintiff's employment was terminated that same day.

On August 12, 2024, Plaintiff filed a two-count Complaint in state court, alleging that Defendant had violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1–15, and that Defendant had engaged in common law retaliatory discharge. *See generally* Compl., Not. Removal Ex. B, ECF No. 1-2 at 1–7. Defendant filed a motion to dismiss,

asserting that a violation of the IWPCA could not be the basis of a common law retaliatory discharge claim. Mot. Dismiss 1–5, Not. Removal Ex. D, ECF No. 1-4 at 1–5. Plaintiff sought leave to file the Amended Complaint, which dropped the IWPCA and common law retaliatory discharge claims in favor of a single claim that Defendant had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. Mot. Leave File Am. Compl. ¶¶ 1–9, Not. Removal Ex. E, ECF No. 1-5 at 1–3. The state court granted Plaintiff leave to file the Amended Complaint by approving the parties' Agreed Order. *See* Not. Removal ¶ 4, ECF No. 1; Agreed Order 1–2, Not. Removal Ex. F, ECF No. 1-6. Defendant removed this case to federal court, invoking the Court's federal-question jurisdiction. *See* Not. Removal ¶ 8 (first citing 28 U.S.C. § 1331; and then citing 28 U.S.C. § 1441). Defendant filed its Answer shortly thereafter. Answer, ECF No. 5.

After the Court directed the parties to submit a discovery plan pursuant to Federal Rule of Civil Procedure 26(f)(3), Jan. 6, 2025 Text Order, Plaintiff informed the Court that the parties had reached a settlement, Jan. 29, 2025 Text Order. The Court denied the parties' first request that the Court approve their settlement agreement, which the parties hoped to file under seal. *See* Feb. 19, 2025 Text Order ("A bare desire for secrecy is insufficient to overcome the presumption of public access to judicially approved settlement agreements."). The instant Joint Motion followed shortly thereafter.

## DISCUSSION

**I. Legal Standard**

Stipulated settlements of claims brought under the FLSA require court approval. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Iannotti v. Wood Grp. Mustang*, No. 20-cv-958-DWD, 2023 WL 6217061, at *1 (S.D. Ill. Sept. 25, 2023)

3

("The Seventh Circuit has not addressed the question of whether stipulated agreements under the FLSA require court approval, but district courts in the Seventh Circuit routinely require such approval." (quotation marks omitted)); *Salcedo v. D'Arcy Buick GMC, Inc.*, 227 F. Supp. 3d 960, 961 & n.1 (N.D. Ill. 2016) (collecting cases).[2] "To determine the fairness of a settlement under the FLSA, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Rambo v. Glob. Diversified, Inc.*, No. 4:20-cv-04212-SLD-JEH, 2021 WL 262556, at *1 (C.D. Ill. Jan. 26, 2021) (quotation marks omitted).

Courts generally approve settlements that are the product of "contentious arm's-length negotiations, which were undertaken in good faith by counsel and where serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Ellison v. Nisource, Inc.*, No. 2:15-CV-59-TLS, 2016 WL 782857, at *1 (N.D. Ind. Feb. 29, 2016) (quotation marks omitted). Relevant factors that a court considers when reviewing an FLSA settlement include:

> (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016).

II. **Analysis**

The parties' Settlement Agreement and Release in Full ("Settlement Agreement") requires Plaintiff to waive, release, discharge, and covenant not to sue Defendant and related

---

[2] FLSA claims may also be settled under direct supervision of the Secretary of Labor. 29 U.S.C. § 216(c).

entities, *see* Settlement Agreement 1, Joint Mot. Ex. A, ECF No. 10-1 (defining a class of "Releasees"), "with respect to any and all causes of action . . . or any other claims that arose while he was employed by Releasees." *Id.* § 3.1.  Plaintiff is also required to voluntarily dismiss this case with prejudice, keep confidential the Settlement Agreement's terms (with some limited exceptions), and to not disparage Releasees. *Id.* §§ 2.1, 6.1–6.2.  The parties agree that the Settlement Agreement is not an admission of liability or wrongdoing on Releasees' part. *Id.* § 5.1.  In exchange, Plaintiff will receive two payments—a first payment of $8,847.52 and a second payment of $8,847.53—and his attorneys will receive a single payment of $9,804.95, resulting in a total payment of $27,500. *Id.* § 2.2.

The Court finds that this settlement agreement is the product of arm's-length negotiations.  Both sides are represented by experienced counsel negotiating in good faith regarding clear *bona fide* disputes over the law and facts.  Joint Mot. ¶ 7.  As an example of the parties' *bona fide* disputes, Defendant has consistently maintained that Plaintiff was exempt from the overtime requirements imposed by the FLSA, *see* Am. Compl. ¶¶ 11–12; 29 U.S.C. § 207(a)(1) (establishing entitlement to overtime compensation for specified employees), whereas Plaintiff has maintained that he satisfied an exception to that exemption, *see* Am. Compl. ¶ 13.  As explained further below, this is a somewhat complicated and frequently litigated issue in FLSA cases.

The FLSA exempts certain employees from its overtime requirements, including "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [the Motor Carrier Act, 49 U.S.C. § 31502]." 29 U.S.C. § 213(b)(1).  "[T]he employees of a motor carrier that engages in interstate commerce may come under the Secretary of Transportation's jurisdiction under the Motor

Carrier Act." *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660–61 (7th Cir. 2011) (citing 49 U.S.C. § 31502). "Employees subject to the Secretary of Transportation's jurisdiction under § 31502 are exempt from the FLSA's maximum hour and overtime provisions pursuant to the FLSA's motor carrier exemption." *Id.* at 661 (citing 29 U.S.C. § 213(b)(1)). The employer bears the burden of showing that the employee was exempt, and this may be a fact-intensive showing. *See id.* at 662–63 (reversing grant of summary judgment because employer's affidavit that it "routinely provide[d] out of state . . . services" and the employee "was subject to being assigned an out state . . . service run at all times during his employment" was too "inconclusive and ambiguous"). The employee's rejoinder to this argument is to show that he satisfies an exception to that exemption because he "perform[ed] duties on motor vehicles weighing 10,000 pounds or less." *Frapanpina v. Garda CL Great Lakes, Inc.*, No. 19-CV-493, 2021 WL 1088302, at *2 (N.D. Ill. Mar. 22, 2021) (quotation marks omitted).

   Suffice to say that further factual development—when, where, and what Plaintiff drove on Defendant's behalf—would be required to sort out the parties' *bona fide* dispute regarding whether Plaintiff was exempt from the overtime-pay requirements of the FLSA. Because this dispute represents a serious question of fact and law affecting any potential recovery, resolution of Plaintiff's claim at this early stage avoids the risk and expense of protracted litigation and provides substantial value to both parties. *See Paredes*, 2016 WL 1555649, at *2 (*"*By resolving their claims against [the defendant] at this early stage, the plaintiffs are able to avoid that expense and delay, and to receive their settlement payments now instead of seeking to recover a judgment months or years down the line."); *Ellison*, 2016 WL 782857, at *1 ("In light of these issues, the value of an immediate recovery outweighs the mere possibility of further relief after litigating the matter further at the trial court level.").

In sum, the parties' Settlement Agreement is the fair and reasonable product of an arm's-length negotiation between represented parties where *bona fide* legal and factual questions would substantially affect any potential recovery. Therefore, the Court APPROVES the parties' Settlement Agreement. The parties state that Plaintiff will dismiss this matter with prejudice once the Court approves the Settlement Agreement and Plaintiff's counsel receives the settlement funds. Joint Mot. ¶ 9. The Court sets a thirty-day deadline for either the contemplated dismissal or a status report apprising the Court as to the funds' disbursement.

## CONCLUSION

Accordingly, the Joint Motion for Court Approval of Settlement and Dismissal of Complaint, ECF No. 10, is GRANTED. The Court APPROVES the parties' Settlement Agreement. Plaintiff is DIRECTED to file either a stipulation of dismissal or status report by May 15, 2025.

Entered this 15th day of April, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
